# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MATTHEW MULLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Matthew Mullin, and for his claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

## PARTIES

1. Matthew Mullin ("Mullin") is a resident and citizen of the State of Missouri.

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln.

## JURISDICTION AND VENUE

3. Mullin brings his claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

1

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Mullin's occupation was as a Field Technician II for Charter Communications, LLC., dba Spectrum ("Spectrum").

10. Mullin's occupation required him to continuously stand, to frequently walk, climb ladders, reach above his head, climb utility poles, connect wires into existing connections, drive a handcart, to bend at the waist, push, and twist, lift up to 50 pounds frequently, kneel, handle, perform fine motor movements, and perform foot controls.

11. Mullin's occupation was situated at the "Heavy" exertional level.

12. During Mullin's employment, he became unable to perform the duties of his job due to a combination of physical conditions, including but not limited to degenerative disc disorder, lumbar, cervical, and neck pain, pain in his right leg, sleep disturbance, and anxiety. These conditions created restrictions and limitations that were incompatible with the ability to perform the material and substantial duties of his occupation.

13. On December 12, 2020, Mullin worked for Spectrum for the last day. Upon his leave from work, Mullin presented a short-term disability ("STD") claim, which was paid through exhaustion. Subsequently, Mullin initiated a Long-term disability ("LTD") claim.

14. Spectrum sponsored a group LTD benefits plan ("Plan") for its participating employees.

15. The LTD Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

16. The Plan offered disability benefits to qualifying Spectrum's employee Plan participants.

17. At all relevant times, Mullin has been a participant and covered person under the terms of the Plans.

18. Lincoln is the administrator of the Plan.

19. Spectrum delegated or attempted to delegate the function of issuing LTD claim determinations to Lincoln.

20. Spectrum and Lincoln entered into an administrative services contract through which Spectrum paid Lincoln for acting as claims administrator.

21. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits.

22. The LTD policy provides that an Insured Person is entitled to disability payments if that person becomes disabled. Disability is defined as follows:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

23. The policy defines "duties" as follows:

> **MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
> (1) are normally required to perform the Insured Person's Own Occupation; and
> (2) could not reasonably be modified or omitted.

24. On September 19, 2021, Mullin received notification that Lincoln had denied his LTD benefits claim. In their denial, Lincoln cited the pre-existing condition exclusion.

25. Lincoln's determination that LTD benefits were not payable was based solely on a single conference call between Lincoln and Anthem Insurance Company ("Anthem"). Not only did Lincoln base its denial on a single chiropractic adjustment allegedly performed by Dr. Robert Curtis in November of 2019, it also wrongfully denied Mullin's claim under a faulty pre-existing premise, with no more proof than a phone call. No records were obtained or reviewed from Dr. Curtis, primarily because he died in December of 2019, a fact which Mullin stressed repeatedly. In fact, no written documentation was obtained by Lincoln in relation to the conference call to Anthem.

26. After Lincoln's denial, Mullin requested his claim file from Lincoln.

27. On September 28, 2021, Mullin received his claim file, consisting of 476 pages.

28. During the entire administration of Mullin's claim, Lincoln failed to review any records to determine if Mullin was actually disabled. Instead, Lincoln limited its review to determining whether Mullin's conditions were pre-existing. Further, Lincoln failed to consider whether Mullin had prior coverage or continuous LTD coverage from a prior employer, which would have made the pre-existing condition exclusion inapplicable.

29. On March 18, 2022, Mullin submitted a written appeal of Lincoln's September 19, 2021 denial of his LTD claim. The appeal was accompanied by additional medical and other evidence and was submitted within 180 days of Lincoln's initial denial.

30. On August 2, 2022, Lincoln advised Mullin that it had obtained a "peer review" report from Eric Finkelstein, MD finding that if Mullin had any medical restrictions or limitations, they were temporary.

31. Dr. Finkelstein is employed by Exam Coordinators Network, a division of Genex Services, LLC – entities that have long-standing financial relationships with Lincoln.

32. Dr. Finkelstein has never met or examined Mullin.

33. On August 2, 2022, Lincoln also advised Mullin that it had obtained a "peer review" report from Caleab Spencer, RN. Spencer noted that there were no treatment records of office visit notes on file to suggest that Mullin was treated during the pre-existing "look-back" period.

34. Lincoln supplied Dr. Finkelstein's report and Spencer's report in its August 2, 2022 letter, and represented that it would not make a determination on Mullin's claim until August 23, 2022 so as to afford Mullin an opportunity to respond to the reports.

35. On August 9, 2022, Lincoln issued its final denial, stating:

> Since Mr. Mullin's effective date of coverage was January 7, 2020 and his disability occurred on December 23, 2020, it was necessary to conducted a pre-existing condition investigation for the period October 7, 2019 to January 6, 2020, relative to his effective date of coverage and medical treatment. The evidence obtained demonstrate that Mr. Mullin received treatment for the same (or related) condition for which he is claiming disability.

36. Both ERISA and the Policy itself require such denials to provide specific information, including:

   a. The specific reason(s) the claim was denied;

   b. Specific reference to the Policy provision(s) on which the denial was based;

   c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary;

   d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision; and

5

e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

37. Mullin has at all relevant times met the definition of "Disability or Disabled" under the Plan, remains disabled, and is entitled to benefits.

38. Mullin has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

39. Mullin realleges the preceding paragraphs as if fully set forth herein.

40. Mullin is entitled to all unpaid and accrued LTD benefit, as Lincoln:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to perform adequate vocational reviews;

    c. Failed to refer Mullin's claim to qualified medical professionals;

    d. Failed to properly consider Mullin's medical impairments and resulting limitations;

    e. Failed to respond to Mullin's arguments appropriately and logically on appeal;

    f. Failed to provide evidence it relied upon when determining Mullin's claim following proper request; and

    g. Issued an unfavorable decision that was arbitrary and capricious.

41. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Mullin is entitled to an award of actual damages for losses suffered.

42. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's

6

attorney's fees, costs, and prejudgment interest.

43. Lincoln has not satisfied its obligation to pay Mullin's LTD benefits.

44. Lincoln's adverse benefit determination is subject to a *de novo* standard of review.

45. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Mullin prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 C.F.R. § 2560.501-1 – PROCEDURAL AND STATUTORY NONCOMPLIANCE

46. Mullin realleges paragraphs 1-45 as if fully set forth herein.

47. ERISA imposes on claims administrators the duty to establish and maintain reasonable claims procedures. 29 C.F.R. § 2560.503-1(b).

48. 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) afford Mullin the right to a full and fair review on appeal.

49. Lincoln, in violation of ERISA and its own procedures, deprived Mullin of a full and fair opportunity to review and respond to "peer report" reviews it had obtained.

50. Mullin was further harmed by Lincoln's failure to provide Mullin with a description of the information necessary to perfect the claim and an explanation of why the information is necessary. 29 C.F.R. § 2560.503-1(g)(1).

51. Lincoln's wrongful denial of benefits has resulted in Mullin's loss of the ability to pay for expenses of living and the creation of high-interest debt which would have been unnecessary had Lincoln timely and appropriately paid benefits. He further has incurred charges and expenses associated with being evicted from his home, including moving and storage costs.

52. These failures afford Mullin the right to pursue any remedy under Section 502(a) of

ERISA, including 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

53. WHEREFORE, Lincoln's failure to administer Mullins claim in good faith is a breach of its fiduciary and procedural duties required by ERISA. Lincoln's determination is subject to a *de novo* standard of review.

## COUNT III
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

54. Mullin realleges the preceding paragraphs as if fully set forth herein.

55. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

56. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

57. Lincoln, the Plan's designated claims administrator, is a fiduciary.

58. Mullin participated in and benefitted from the Plan as previously indicated.

59. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Spectrum.

60. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

61. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

62. Lincoln breached its fiduciary duty in:
    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;
    b. Attempting to confound Mullin's claim process for its own benefit by refusing upon request to exhaust administrative remedies, and simultaneously representing that Mullin's claims were subject to ERISA;
    c. Repeatedly mischaracterizing Mullin's occupation for its own interests;
    d. Relying on an implausible medical review to further its own interests; and
    e. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to Mullin's claim for benefits;
    f. Relying upon the opinions of reviewers who have a financial interest in the outcome of Mullin's claim;
    g. Obtaining medical opinions from persons who do not possess the training, education or experience to render medical judgments; and
    h. Issuing an adverse benefit determination before the expiration of time Lincoln had purportedly afforded Mullin to review and respond to "peer review" reports.
63. Lincoln denied Mullin's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.
64. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Mullin and the Plan's participants and beneficiaries generally.

65. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

66. Lincoln's violations of regulations alone allow Mullin the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

67. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

68. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Mullin prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Paul Taylor
Paul J. Taylor, Mo. #72159
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.883.4142
F: 816.792.3634
ptaylor@burnettdriskill.com
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF